# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | Case No. 20-10846 |
| **ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,** | Section "A" |
| | Chapter 11 |
| Debtor. | |

| | |
|---|---|
| **OFFICIAL COMMITTEE OF UNSECURED CREDITORS,** | |
| Plaintiff, | |
| v. | Adversary Proceeding No. 22-01015 |
| **THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, et al.,** | |
| Defendants. | |

## MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON <u>MONDAY, OCTOBER 17, 2022,</u> AT 1:30 P.M. IN COURTROOM B-709, 500 POYDRAS STREET, NEW ORLEANS, LA 70130, OR BY TELEPHONE THROUGH THE DIAL-IN FOR SECTION A 1-888-684-8852; ACCESS CODE 9318283. IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PLEADING, YOU MUST RESPOND IN WRITING. UNLESS DIRECTED OTHERWISE BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT NO LATER THAN SEVEN (7) DAYS BEFORE THE HEARING DATE. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

NOW INTO COURT, through undersigned counsel, comes The Roman Catholic Church of the Archdiocese of New Orleans (the "**Debtor**" or "**Archdiocese**" or "**ANO**"), who respectfully files this motion (this "**Motion**") to dismiss the *First Amended Complaint for Declaratory Relief* (the "**Complaint**") [Adv. Doc. 32], filed by the Official Committee of Unsecured Creditors (the "**Committee**") in the above-captioned adversary proceeding (the "**Adversary Proceeding**").

## I.     Introduction

Despite having received more than ample information regarding the Archdiocese's assets and relationship with the Related Parties, the Committee continues to drain estate assets by launching improper litigation attacks which interfere with the administration of the estate. The Adversary Proceeding is another example of the Committee disregarding this Court's orders and trying to circumvent the administration of the estate under the U.S. Bankruptcy Code (the "**Bankruptcy Code**").

The Committee's Complaint asks the Court to find:

> (i) that cash and investments owned, managed and controlled by ANO worth more than $270 million held in accounts which it refers to as Portfolio A [ ] and Portfolio B . . . are not held in trust for ANO's Parishes and Non-Debtor Affiliates . . . ; (ii) that the assets in Portfolio A and Portfolio B, along with the assets in ANO's Operating Account [ ] are not subject to enforceable donor restrictions; and (iii) even if express or other trusts and/or donor restrictions are found to exist, the purported trust funds and restricted funds were commingled with ANO's operating cash and other non-trust funds and unrestricted assets and cannot be traced or identified so that the assets in Portfolio A, Portfolio B and the Operating Account constitute property of ANO's estate.

[Adv. Doc. 32, ¶ 1].[1] As such, the Committee requests a judgment declaring that:

---

[1] Capitalized terms used but not defined in this summary are defined elsewhere in this Motion.

1)  "Portfolio A, and the funds and assets therein, are not held by ANO in either an express or other trust, and all of the funds and assets therein, constitute property of ANO's' estate under 11 U.S.C. § 541(a)(1); . . ."

2)  "Portfolio B, and the funds and assets therein, are not held by ANO in either an express or other trust, and all of the funds and assets therein, constitute property of ANO's' estate under 11 U.S.C. § 541(a)(1); . . ."

3)  "Loans made by Portfolio B are property of ANO's estate under 11 U.S.C. § 541(a)(1); . . ."

4)  "Parishes and Non-Debtor Affiliates cannot meet their burden to trace cash deposited into ANO's Operating accounts and commingled with other funds, prior to being transferred to Portfolio A, and therefore Portfolio A, and all of the funds and assets therein, constitute property of ANO's estate under 11 U.S.C. § 541(a)(1); . . ."

5)  "Parishes and Non-Debtor Affiliates cannot meet their burden to trace cash deposited into ANO's Operating accounts and commingled with other funds, prior to being transferred to Portfolio B, and therefore Portfolio B, and all of the funds and assets therein, constitute property of ANO's estate under 11 U.S.C. § 541(a)(1); . . ."

6)  "Parishes and Non-Debtor Affiliates cannot meet their burden to trace cash deposited into Portfolio A and commingled with ANO's operating funds in Portfolio A, and all of the funds and assets therein, constitute property of ANO's estate under 11 U.S.C. § 541(a)(1); . . ."

7)       "Parishes and Non-Debtor Affiliates cannot meet their burden to trace cash deposited into Portfolio B and commingled with ANO's funds in Portfolio B, and all of the funds and assets therein, constitute property of ANO's estate under 11 U.S.C. § 541(a)(1); . . ."

8)       "ANO Portfolio A Purported Restricted Funds are unrestricted assets of the estate, free and clear of the interests of others, and may be used to satisfy the claims of general creditors; . . ."

9)       "Non-Debtor Portfolio A Purported Restricted Funds are unrestricted assets of the estate, free and clear of the interests of others, and may be used to satisfy the claims of general creditors; . . ."

10)     "ANO Portfolio B Purported Restricted Funds are unrestricted assets of the estate, free and clear of the interests of others, and  may be used to satisfy the claims of general creditors; . . ."

11)     "Non-Debtor Portfolio B Purported Restricted Funds are unrestricted assets of the estate, free and clear of the interests of others, and may be used to satisfy the claims of general creditors; . . ."

12)     "[T]he Operating Account Purported Restricted Funds are unrestricted assets of the estate, free and clear of the interests of others, and may be used to satisfy the claims of general creditors[.]"

[Adv. Doc. 32 at pp. 27-28].

As detailed below, the claims that the Committee asserts in the Adversary Proceeding are property of the bankruptcy estate. As such, the Committee does not have independent standing to pursue the Adversary Proceeding, and it has not sought derivative standing to do so. Indeed, the

Adversary Proceeding was filed by the Committee in direct violation of a tolling agreement between the Committee and the Debtor requiring the Committee to seek derivative standing to pursue the aforementioned claims. This Court, therefore, must dismiss the Adversary Proceeding and allow the Archdiocese to administer the estate as the debtor in possession under §§ 1107(a) and 1108 of the Bankruptcy Code.

## II. <u>Background</u>

### A. The Bankruptcy Filing and the Tolling Agreement

On May 1, 2020 (the "**Petition Date**"), the Archdiocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (this "**Chapter 11 Case**"). The Archdiocese remains in possession of its property and is managing its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. The Office of the United States Trustee (the "**UST**") appointed the Official Committee of Unsecured Creditors (the "**Committee**") on May 20, 2020 [ECF No. 94], which Committee was reconstituted on June 10, 2020 [ECF No. 151], October 8, 2020 [ECF No. 478], June 7, 2022 [ECF No. 1575], and June 21, 2022 [ECF No. 1618]. The Official Committee of Unsecured Commercial Creditors (the "**Commercial Committee**" and collectively with the Committee, the "**Committees**") was appointed by the UST on March 5, 2021. [ECF Nos. 772 & 792].

On March 25, 2022, the Archdiocese, the Committee, the Commercial Committee, and certain parishes, entities, organizations, missions, campus ministry, centers, institutions of higher learning, catholic schools, and other facilities (collectively, the "**Related Parties**",[2] and together with the Archdiocese, the Commercial Committee, and the Committee, the "**Parties**") filed the *Expedited Joint Motion to Approve Tolling Agreement* [ECF No. 1390] (the "**Tolling Motion**").

---

[2] *See* ECF No. 1406, Exhibit A.

The Court granted the Tolling Motion by order dated April 1, 2022 [ECF No. 1406] (the "**Tolling Order**"), thereby approving the Tolling Agreement attached thereto as Exhibit B (the "**Tolling Agreement**").

> The Tolling Agreement provides, among other things, that the Committees
>
> > believe that the Estate may have claims against the Related Parties, including without limitation any "claim" as such term is defined in Section 105(5) of the Bankruptcy Code, claims under, *inter alia*, Rule 7001 of the Federal Rules of Bankruptcy Procedure, Bankruptcy Code §§105, Chapter 5 of the Bankruptcy Code, and/or claims under State, Federal and common law, including, but not limited to, those under single business enterprise, alter ego/piercing the corporate veil, substantive consolidation, and/or directors and officers liability theories (collectively, the "***Estate Claims***").

[ECF No. 1406, Exhibit B].

In an effort to facilitate the continued efforts to resolve certain issues via mediation, the Parties agreed to extend the time to commence the Estate Claims through and including May 1, 2023 for the Debtor, and as applicable, the Commercial Committee and the Committee (the "**Tolling Period**"). [*Id.* at p. 2]. As further consideration for the Debtor's entering into the Tolling Agreement, the Committees agreed that "[n]either the Commercial Committee nor the Committee may seek derivative standing to commence any of the Estate Claims during the Tolling Period ***except upon forty-five days' prior written notice to the Debtor and the other committee, through their counsel of record.***" [*Id.* at p. 3] (emphasis added).

### B. The Adversary Proceeding

On April 14, 2022, the Committee filed the *Complaint for Declaratory Relief* [Adv. Doc. 1] (the "**Initial Complaint**"). The Committee subsequently filed the Complaint on April 27, 2022 against the Archdiocese and certain parishes and non-debtor affiliates (collectively, the "**Non-Debtor Defendants**"). The Adversary Proceeding is nothing more than the Committee's attempt

to assert certain Estate Claims under chapter 5 of the Bankruptcy Code, an act expressly prohibited by the Tolling Agreement. Additionally, the Committee lacks standing to pursue the Adversary Proceeding under the Bankruptcy Code.

### III.    Motion to Dismiss for Lack of Standing – Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure ("**Rule 12(b)(1)**") as made applicable to adversary proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rule 7012**") provides that a party may raise the defense of lack of subject-matter jurisdiction upon motion. The standard of review of a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss under Rule 12(b)(6). *Harrison v. Safeco Ins. Co. of Am.,* No. 06-4664, 2007 U.S. Dist. LEXIS 34504, at *3 (E.D. La. Jan. 26, 2007). The party asserting jurisdiction has the burden of proving that jurisdiction exists. *Krim v. PC Order Dot Com, Inc.,* 402 F.3d 489, 493 (5th Cir. 2005). Once a defendant brings a motion to dismiss for lack of standing, the burden is upon the plaintiffs to prove that they have standing. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998).

In order for this Court to consider the Complaint, the Court must have statutory subject matter jurisdiction, and the matter must be a justiciable case or controversy. The standard for constitutional standing consists of three elements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the Committee must have suffered an injury in fact--an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id.* (internal citations and quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court.'" *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights*

*Org.*, 426 U.S. 26, 41-42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Id.* at 561 (internal citations omitted). The Supreme Court has defined an injury that is "particularized" to "mean that the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n. 1.

## A.  The Causes of Action in the Complaint are Property of the Bankruptcy Estate

"Property of the estate" as defined in 11 U.S.C. § 541 is a very broad concept, and it includes causes of action. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986). Under bankruptcy law, as of the commencement of the bankruptcy case, the debtor's interest in property, whether a legal or an equitable interest, became property of the estate as provided by 11 U.S.C. § 541(a)(1). For a party other than the debtor-in-possession to assert a direct cause of action, the party must assert a cause of action for an injury that it suffered separate and apart from the debtor's injuries or any other estate claim. *In re Salander*, 472 B.R. 213, 222 (Bankr. S.D.N.Y. 2012). Estate claims are vested in the estate because their successful prosecution results in a benefit to the estate, which in turn benefits all creditors. *In re Black Elk Energy Offshore Operations, LLC*, No. 15-34287, 2016 Bankr. LEXIS 2708, at *2 (Bankr. S.D. Tex. July 26, 2016). Allowing the trustee (or debtor-in-possession), rather than creditors, to pursue claims based on harm suffered by a debtor entity ensures that the estate's distribution will remain orderly. *Id.* Indeed, "[i]f a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim." *In re Specialty Retail Shops Holding Corp.*, No. 19-504, 2020 U.S. Dist. LEXIS 224730, at *8-9 (D. Neb. Dec. 2, 2020) (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700-01 (2d Cir. 1989)); *see also Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir. 1986) ("Making the pursuit of certain causes of action the sole responsibility of the trustee in

bankruptcy furthers the fundamental bankruptcy policy of equitable distribution among creditors.").

The causes of action that the Committee brings in the Complaint belong to the bankruptcy estate. First, it is widely accepted that only the trustee (or debtor-in-possession in chapter 11) has independent standing to pursue chapter 5 avoidance actions and other estate causes of action. *See, e.g.,* 11 U.S.C. § 323 ("The trustee in a case under this title is the representative of the estate."); 11 U.S.C. § 541(a)(1) ("The commencement of a case . . . creates an estate . . . comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case."). "We interpret 'all legal or equitable interests' [in Section 541(a)] broadly: The estate includes causes of action belonging to the debtor." *Torch Liquidating Tr. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009); *see also Schertz-Cibolo-Universal City Ind. Sch. Dist. v. Wright (In re Educators Group Health Tr.)*, 25 F.3d 1281 (5th Cir. 1994) (cause of action belongs to estate if harm to creditor is indirect and if debtor could have raised action prepetition). In other words, the creditor will only have independent standing on a claim if the "asserted injury does not flow from injury to the debtor." *Meridian Capital CIS Fund v. Burton (In re Buccaneer Res., L.L.C.)*, 912 F.3d 291, 293 (5th Cir. 2019).

As detailed above, the Complaint asks this Court to determine:

> (i) that cash and investments owned, managed and controlled by ANO worth more than $270 million held in accounts which it refers to as Portfolio A [ ] and Portfolio B . . . are not held in trust for ANO's Parishes and Non-Debtor Affiliates . . . ; (ii) that the assets in Portfolio A and Portfolio B, along with the assets in ANO's Operating Account [ ] are not subject to enforceable donor restrictions; and (iii) even if express or other trusts and/or donor restrictions are found to exist, the purported trust funds and restricted funds were commingled with ANO's operating cash and other non-trust funds and unrestricted assets and cannot be traced or identified so that the assets in Portfolio A, Portfolio B and the Operating Account constitute property of ANO's estate.

[Adv. Doc. 32, ¶ 1]. The Committee also asks that the Court declare that Portfolio A, Portfolio B, and the Operating Account are "unrestricted assets of the estate, free and clear of the interests of others, and may be used to satisfy the claims of general creditors[.]" [*Id.* at pp. 27-29].The Committee has not asserted *any* injury to the Committee that does not flow from injury to the Archdiocese. The Committee, therefore, has not and cannot show a direct injury that is not dependent on the injury to the estate. *In re Buccaneer Res., L.L.C.*, 912 F.3d at 293-94. As such, the causes of action in the Complaint are estate causes of action. Further, as outlined below, the Committee does not have independent standing to pursue the Adversary Proceeding-.

## B. The Committee Does Not Have Independent or Derivative Standing to Pursue the Adversary Proceeding

### 1. No Independent Standing

For a party other than the debtor-in-possession to assert a direct cause of action, the party must assert a cause of action for an injury that it suffered separate and apart from the debtor's injuries or any other estate claim. *In re Salander*, 472 B.R. 213, 222 (Bankr. S.D.N.Y. 2012). Otherwise, the claims dependent upon the debtor's injury remain property of the estate and subject to the automatic stay. *See id.* at 222; *see also In re Salander*, 450 B.R. 37, 45 (Bankr. S.D.N.Y. 2011) ("The automatic stay is intended to 'allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.'") (internal citations omitted); *In re Colonial Realty Co.*, 980 F.2d 125, 133 (2d Cir. 1992) ("The purpose of the automatic stay is 'to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'") (internal citations omitted). The Committee cannot prove an independent injury that is separate and apart from any injury of the Archdiocese. "Usually a party only has standing to pursue a cause of action if a wrongful act injures a legal right or property

interest held by that party." *In re Salander*, 472 B.R. at 220 (citing *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 645 (S.D.N.Y. 2008)). In a chapter 11 context, only the debtor in possession has independent standing to pursue estate causes of action. *Id.* (citing *Reed v. Cooper (In re Cooper)*, 405 B.R. 801 (Bankr. N.D. Tex. 2009)). Any other party lacks independent standing to bring a cause of action on behalf of the estate unless the party has "standing to bring a 'derivative' action on behalf of a legal entity, such as a corporation, in which [it] holds an interest if that entity would be the only party entitled to bring a direct suit and has failed to do so." *Id.* (citing *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 645 (S.D.N.Y. 2008)).

The Committee does not have independent standing to pursue the Adversary Proceeding. Accepting the allegations in the Complaint as true, the Committee fails to plead any injury that is separate and apart from the injury suffered by the Archdiocese. With no particularized injury, the Archdiocese is the proper party to bring the estate cause of action, and any action by the Committee would be derivative of the estate's cause of action.

Further solidifying the Committee's lack of standing, if the Committee's allegations are true and the assets are property of the bankruptcy estate, then any cause of action related to those assets belongs to the bankruptcy estate, and the Committee does not have independent standing. If anything, the Adversary Proceeding is premature because the Archdiocese has not had the opportunity to assert the causes of action in the Complaint on its own, and the Committee has not provided any evidence that the Archdiocese does not intend to bring these causes of action on behalf of the estate. The Archdiocese is the only party, under the Bankruptcy Code and the Tolling Agreement, who has independent standing to pursue the causes of action in the Complaint. The Committee cannot prove an independent injury, and the Committee, therefore, should have sought derivative standing to pursue the Adversary Proceeding on behalf of the Archdiocese.

## 2. No Derivative Standing

Because the causes of action enumerated in the Complaint belong to the estate, and the Committee lacks independent standing to pursue those causes of action, the Committee had to seek derivative standing. The Committee has not taken the necessary procedural steps to have derivative standing under the Bankruptcy Code and/or the Tolling Agreement.

To the extent the party's injury is dependent upon the debtor's injury, such claim is derivative and may not be raised by the party unless it can prove the elements to allow derivative standing. It is fundamental that derivative claims are property of the debtor's estate. *In re Educators Group Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994). If the claim could have been raised prepetition, the claim is derivative and belongs to the estate. *In re Dexterity Surgical, Inc.*, 365 B.R. 690, 695 (Bankr. S.D. Tex. 2007) ("[I]f the claims are derivative to the corporation—the claims will belong to the estate."). The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another. Because the claims belong to the estate, the Adversary Proceeding also violates the automatic stay. 11 U.S.C. § 362(a)(3).

For the Committee, therefore, to bring the claims in the Complaint, the Committee must seek derivative standing. It has not done so. There is no explicit authority in the Bankruptcy Code that allows a bankruptcy court to grant an individual creditor or a creditors' committee standing to initiate adversary proceedings in the name of the debtor or trustee. Moreover, the Fifth Circuit Court of Appeals and a majority of other circuit courts have held that such statutory authority nonetheless is implied. *See La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*, 858 F.2d 233 (5th Cir. 1988) (noting that "the circumstances under which a creditors' committee may sue are not explicitly spelled out in the Code"); *see also Unsecured Creditors*

*Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901, 904 (2d Cir. 1985);

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 330 F.3d 548 (3d Cir. 2003); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Grp., Inc.)*, 66 F.3d 1436, 1440-41 (6th Cir. 1995); *Fogel v. Zell,* 221 F.3d 955, 965 (7th Cir. 2000); *PW Enters. v. N.D. Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892 (8th Cir. 2008); *Avalanche Mar., Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1031 (9th Cir. 1999).

The seminal case in this jurisdiction is *Louisiana World Exposition*, where the estate had potential causes of action against the debtor's officers and directors, and the creditors' committee demanded that the debtor bring an action. 858 F.2d at 235. The debtor's board of directors refused to vote on the demand, recognizing that it had an inherent conflict of interest. *Id.* Construing that response as a refusal to sue, the creditors' committee obtained permission from the bankruptcy court to file an action on the debtor's behalf and then brought suit in federal district court where it faced a motion to dismiss for lack of standing. *Id.* at 235-36. The district court granted the motion to dismiss. *Id.* at 236.

On appeal, the Fifth Circuit recognized that it is well settled in other jurisdictions that a creditors' committee has standing in some circumstances to file suit on behalf of a debtor. *Id.* at 247. It agreed with those jurisdictions that the statutory basis for granting a creditor's committee derivative standing to pursue estate causes of action is implied in 11 U.S.C. §§ 1103(c)(5) and 1109(b). *Id.* Recognizing that such circumstances existed in the matter before it, the Fifth Circuit articulated three considerations relevant in making that determination, including: (1) whether the claim is colorable; (2) whether the debtor in possession or the trustee unjustifiably refused to pursue the claim; and (3) whether the creditors' committee first received leave to sue from the bankruptcy court. *Id.* These requirements ensure that derivative standing does not risk interfering

with the debtor or trustee and prevents creditors from pursuing weak claims. *In re On-Site Fuel Serv.*, No. 18-04196, 2020 Bankr. LEXIS 1257, at *30-31 (Bankr. S.D. Miss. May 8, 2020) (citing *Lily v. Fed. Deposit Ins. Corp. (In re Natchez Corp. of W. Va.)*, 953 F.2d 184, 187 (5th Cir. 1992)).

Most of the circuit courts have gone the same direction as the Fifth Circuit, in permitting creditors' committees to pursue estate causes of action (1) when a debtor unjustifiably refuses (*see Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 583 (3d Cir. 2003); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1440-41 (6th Cir. 1995)), or (2) even in some circuits, where the debtor merely consents (*see Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 176 (2d Cir. 2005); *Avalanche Mar., Ltd., v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1031 (9th Cir. 1999)). *See also Baltimore-Emergency Servs. II, Corp. v. Nat'l Century Fin. Enters., Inc.*, 432 F.3d 557, 562 (4th Cir. 2005). "If derivative standing is permissible at all, requiring a formal determination of its propriety in a given case is the only way to prevent the creditor from unjustly hijacking the bankruptcy proceedings." *Baltimore-Emergency Servs. II, Corp. v. Nat'l Century Fin. Enters., Inc.,* 432 F.3d 557, 562 (4th Cir. 2005)

Here, the Committee does not have derivative standing to pursue the Adversary Proceeding because it has not complied with the Fifth Circuit procedures outlined in *Louisiana World Exposition*. First, the Committee has not sought leave from the Court. Second, the Archdiocese has not unjustifiably refused to pursue the cause of action. Finally, the Tolling Order makes clear that the Archdiocese does not consent to the Committee pursuing the action without consent, and the Committee's actions violate the Tolling Order. [ECF No. 1406].

### i. The Committee Has Not Made the Required Request on the Archdiocese.

Under Fifth Circuit precedent, the Committee was required to make a request of the Archdiocese regarding the Adversary Proceeding. The Committee has the burden to show it made a request on the Archdiocese, and it unjustifiably refused to pursue the Estate Claims or consented to the Committee's standing to pursue the Estate Claims. *In re On-Site Fuel Serv.*, No. 18-04196, 2020 Bankr. LEXIS 1257, at \*31-34 (Bankr. S.D. Miss. May 8, 2020). The Committee has not done so. Accordingly, the Committee cannot, and has not, plead that the Archdiocese has unjustifiably refused to pursue the underlying causes of action in the Adversary Proceeding. As discussed below, the Tolling Agreement clearly evidences that the Archdiocese does not consent to the Committee pursuing the Adversary Proceeding on behalf of the bankruptcy estate without first making a request on the Archdiocese to pursue the causes of action. In violation of both Fifth Circuit precedent and the Tolling Agreement, the Committee has not made a request on the Archdiocese to pursue the Adversary Proceeding. The Committee, therefore, has not fulfilled the required procedure to afford it derivative standing.

### ii. The Committee Has Not Sought Leave From this Court.

Prior to intervening in or initiating an action on behalf of the estate, the creditor's committee must apply for leave of court to take that action.

> The application must show: 1) that the creditor's committee has made a request of the debtor-in-possession regarding the initiation or prosecution of an action which will benefit the estate, 2) that the request has been refused, 3) a prima facia demonstration that a colorable claim exists which, if successful, would benefit the estate, and 4) the creditor's committee's grounds for contending that the debtor-in-possession's inactivity on the claim is unjustifiable or abusive of their discretion.

*In re Cont'l Airlines Corp.*, 59 B.R. 782, 786 (Bankr. S.D. Tex. 1986) (citing *In re Toledo Equip. Co.*, 35 B.R. 315 (Bankr. W.D. Wis. 1984)). While this step is procedural, it is required to ensure that the other threshold issues, the debtor's unjustifiable refusal to pursue the claims and the presence of a colorable claim, are present. *See AppliedTheory Corp. v. Halilfax Fund, L.P. (In re AppliedTheory Corp.)*, 493 F.3d 82, 85-86 (2d Cir. 2007) (announcing that an unsecured creditors' committee may bring an equitable subordination claim only after it receives leave of court and the trustee/debtor in possession unjustifiably refuses to pursue the claim).

Here, the Committee has not sought leave to pursue the Adversary Proceeding, and it cannot satisfy the necessary requirements to apply for leave from the Court to pursue the Adversary Proceeding. As demonstrated above, the Committee did not make a request on the Archdiocese to pursue these causes of action. The Archdiocese has not unjustifiably refused to pursue the causes of action in the Complaint. In fact, the Archdiocese has carved out these causes of action and extended the time to file such causes of action in the Tolling Agreement. The Committee has not sought leave from the Court, and the Committee cannot demonstrate, nor has it plead, that the requirements for derivative standing are present. While seeking leave is procedural, it requires the Committee to demonstrate to the Court that the Adversary Proceeding is not frivolous. Instead, the Committee has wasted estate resources without taking the minimum, preliminary steps towards bringing a legitimate adversary proceeding.

### iii. The Committee's Actions Violate the Tolling Agreement, and the Tolling Agreement is Clear that the Archdiocese Does Not Consent to the Adversary Proceeding.

The Tolling Agreement prohibits the Committee from pursuing the Estate Claims during the Tolling Period unless the Committee provides the Archdiocese with forty-five days' prior written notice. The Tolling Agreement is clear. The Committee agreed that

the Estate may have claims against the Related Parties, including without limitation any "claim" as such term is defined in Section 105(5) of the Bankruptcy Code, claims under, *inter alia*, Rule 7001 of the Federal Rules of Bankruptcy Procedure, Bankruptcy Code §§105, Chapter 5 of the Bankruptcy Code, and/or claims under State, Federal and common law, including, but not limited to, those under single business enterprise, alter ego/piercing the corporate veil, substantive consolidation, and/or directors and officers liability theories (collectively, the "***Estate Claims***").

[ECF No. 1406, Exhibit B]. If the Committee wants to commence an adversary proceeding on an Estate Claim, which includes claims under chapter 5 of the Bankruptcy Code as defined by the Tolling Agreement, the Committee must provide the Archdiocese with forty-five days' prior written notice.

The Committee has not provided the Archdiocese with the required notice pursuant to the Tolling Agreement or *Louisiana World Exposition*. Indeed, the Complaint makes no mention of any attempt to provide the Archdiocese with prior written notice of the Adversary Proceeding, and the Committee has willfully violated the Tolling Order.

The Tolling Agreement also provides a clear indication that the Archdiocese does not consent to the Committee pursuing the Adversary Proceeding on the estate's behalf. In *Committee of Tort Litigants v. Catholic Diocese of Spokane (In re Catholic Bishop of Spokane)*, No. 05-0274, 2006 U.S. Dist. LEXIS 6025, at *12-17 (E.D. Wash. Jan. 24, 2006), the district court upheld the bankruptcy court's findings, ***under the circumstances of that case***, that the committee had standing to raise the issue of what constitutes property of the bankruptcy estate under 11 U.S.C. § 541(a) and 28 U.S.C. § 157(A). Recognizing that neither party, nor the court, found a case directly on point, the *Spokane* district court cited *Long v. Oak Park*, 117 F.3d 1420 (6th Cir. 1997), which affirmed a bankruptcy court's decision that a creditors' committee had standing to bring an adversary against a non-debtor third party for a determination of estate property. *Spokane*, 2006

U.S. Dist. LEXIS 6025, at *13 (citing *Official Unsecured Creditors Comm. of Long Dev. v. Oak Park Vill. Ltd. P'ship (In re Long Dev.)*, 211 B.R. 232 (Bankr. W.D. Mich. 1994)). The *Spokane* court emphasized that the *Long* bankruptcy court's standing decision was based on a stipulation between the debtor and the committee "which specifically allowed the committee to pursue the litigation on behalf of the debtor because of a conflict of interest." *Id.*

Although the *Spokane* district court affirmed the bankruptcy court's decision to permit the committee to pursue its action, the district court noted that it "would have been more comfortable if the formality of bringing a motion to authorize the filing of the adversary complaints had been presented to the Bankruptcy Court . . . ." *Spokane*, 2006 U.S. Dist. LEXIS 6025, at *16-17.

Unlike the stipulation in *Long* consenting to derivative standing, the Tolling Agreement here specifically prohibits the Committee from pursuing the Adversary Proceeding unless the Committee provides forty-five days' prior written notice to seek derivative standing to pursue the Estate Claims. By executing the Tolling Agreement here, the Parties eliminated any ambiguity or concern created by the holding in *Spokane*.

Further, the Committee has not complied with the procedure under the Tolling Agreement or bankruptcy law to seek derivative standing to pursue the Adversary Proceeding. Pursuant to the Tolling Agreement, the Committee has not provided the Archdiocese with forty-five days' prior, written notice. Additionally, in the Fifth Circuit, a debtor in possession must unjustifiably refuse to pursue the claims. The Committee has not presented evidence that the Archdiocese has refused to pursue the claims or that it provided the Archdiocese with the necessary notice.

### C. The Adversary Proceeding Should be Dismissed Pursuant to Rule 12(b)(1)

The causes of action enumerated in the Complaint are Estate Claims. The Committee cannot establish an injury separate and apart from the Archdiocese's injury to afford it independent

standing, and the Committee has failed to meet the requirements to establish it has derivative standing to pursue the Adversary Proceeding. First, the Committee cannot prove independent standing to pursue the Adversary Proceeding. Indeed, if the Committee is allowed to pursue the Adversary Proceeding and prevails in determining that Portfolio A, Portfolio B, and the Operating Account are property of the bankruptcy estate, then the Committee also proves it should have sought derivative standing to pursue such actions on behalf of the Archdiocese under the Tolling Agreement and *Louisiana World Exposition*. Second, under *Louisiana World Exposition*, the Archdiocese has not unjustifiably refused or consented to derivative standing and the Committee did not seek leave of the Court to pursue the Adversary Proceeding. Finally, the Committee did not provide the Archdiocese with the required forty-five days' written notice pursuant to the Tolling Agreement. The Committee's actions violate the Tolling Order.

The Committee has attempted to "hijack" the Archdiocese's claims before it has had an opportunity to either pursue or refuse to pursue such actions on behalf of the bankruptcy estate in total disregard of the equities of the case. *Baltimore-Emergency Servs. II, Corp. v. Nat'l Century Fin. Enters., Inc.,* 432 F.3d 557, 562 (4th Cir. 2005).

## IV.    Alternatively, the Committee Seeks an Impermissible Advisory Opinion

If the causes of action in the Adversary Proceeding are not Estate Claims, then the Committee has asked the Court to render an impermissible advisory opinion. The Committee has effectively asked the Court to issue an advisory opinion on a hypothetical state of facts without any evidence that the Committee is entitled to relief or the Court has jurisdiction to hear the Adversary Proceeding. It is a long-standing rule that federal courts lack jurisdiction to render advisory opinions. *See Chafin v. Chafin,* 568 U.S. 165, 172 (2013) ("Federal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinion[s]

advising what the law would be upon a hypothetical state of facts.") (citations and quotations omitted); *see also Kittel v. Thomas*, 620 F.3d 949, 951 (9th Cir. 2010) ("The Constitution limits the jurisdiction of the federal courts to live cases and controversies, and as such, federal courts may not issue advisory opinions.").

Although bankruptcy courts are not "Article III" courts because they are constituted as units of the district courts pursuant to Congress' legislative powers, jurisdictional considerations that limit the power of courts to exercise authority pursuant to Article III of the Constitution also limit the power of bankruptcy courts. *N. Pipeline Const. Co. v. Marathon Pipe Line Co*., 458 U.S. 50, 63-64 (1982); 28 U.S.C. § 151. This is so because bankruptcy court jurisdiction is derivative, in that 28 U.S.C. § 1334(a) and (b) grant jurisdiction to the district courts with respect to all cases under title 11, as well as all civil proceedings arising under title 11, or arising in or related to cases under title 11, and all such matters are referred to bankruptcy courts by means of 28 U.S.C. § 157. *See Frye v. Excelsior College (In re Frye)*, No. 08-1258, 2009 Bankr. LEXIS 4556, at *9 (B.A.P. 9th Cir. Apr. 7, 2009). Courts in other jurisdictions have likewise determined that bankruptcy courts lack jurisdictional authority to render advisory opinions.[3] *See In re Flyboy Aviation Props., LLC,* 501 B.R. 828, 841 (Bankr. N.D. Ga. 2013) (finding that, because all of the facts alleged were hypothetical, any ruling would amount to an impermissible advisory opinion); *Jacobs v. Jaeger-Jacobs (In re Jaeger-Jacobs)*, 490 B.R. 352, 358 (Bankr. E.D. Wis. 2013) (noting that bankruptcy courts cannot issue advisory opinions); *see also In re Nunez*, No. 98-7077, 2000 U.S. Dist. LEXIS

---

[3] It is well established that 11 U.S.C. § 105 "does not provide an independent source of jurisdiction, but rather allows the bankruptcy court to act after subject matter jurisdiction has been established under 28 U.S.C. §§ 157 and 1334." *In re Nunez*, 2000 U.S. Dist. LEXIS 12078, at *8 (citing *In re Jacksen*, 105 B.R. 542, 544 (B.A.P. 9th Cir. 1989); *In re Johns-Manville Corp*., 801 F.2d 60, 63 (2d Cir. 1986); *In re Cary Metal Prods., Inc.*, 158 B.R. 459, 465 (N.D. Ill. 1993), a*ff'd sub nom., Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994)).

12078, at *6 (E.D.N.Y. Mar. 17, 2000) ("Bankruptcy courts derive their jurisdiction from Article III courts, . . . and like these Article III courts, bankruptcy courts cannot issue advisory opinions.") (citations omitted).

The Committee's request for a declaratory judgment regarding property of the estate and hypothetical "unrestricted assets of the estate, free and clear of interests" is an attempt to have this Court issue an advisory opinion that does not affect the Committee, because it does not have standing to pursue the action in the first place, and requires the Court to issue an opinion on a hypothetical scenario while ignoring the equities of the case. Specifically, the Committee ignores the substantial increase in creditors that accompanies the determination that Portfolio A, Portfolio B, and the Operating Account are property of the estate. Instead of creating "unrestricted assets of the estate, free and clear of the interests of others", if successful, the Committee introduces hypothetical assets of the estate with valid claims to the assets. It is a zero-sum game that creates litigation for the sake of litigation.[4]

## V.    Conclusion

The Archdiocese asks the Court to dismiss the Adversary Proceeding for lack of standing pursuant to Rule 12(b)(1). The causes of action in the Adversary Proceeding are estate causes of action. The Committee has failed to establish independent standing and has failed to follow the proper procedure to request derivative standing. The Committee has also violated the Tolling Agreement by failing to provide the Archdiocese with forty-five days' prior written notice before

---

[4] *Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 432 B.R. 135, 160 (Bankr. D. Del. 2010) (the non-debtors "still have a claim against the Debtor for their lost investment").

filing the Adversary Proceeding. In the alternative, the Committee's position that it has independent standing asks the Court to issue an impermissible advisory opinion.

WHEREFORE, the Archdiocese prays that this Court dismiss the Adversary Proceeding and grant the Archdiocese all other relief to which it may be entitled at law and in equity.

Dated: August 18, 2022

Respectfully submitted,

/s/ Mark A. Mintz
R. PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#05863)
MARK A. MINTZ (#31878)
SAMANTHA A. OPPENHEIM (#38364)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8000
Facsimile: (504) 589-8260
Email: pvance@joneswalker.com
Email: efutrell@joneswalker.com
Email: mmintz@joneswalker.com
Email: soppenheim@joneswalker.com

**ATTORNEYS FOR**
**THE ROMAN CATHOLIC CHURCH**
**OF THE ARCHDIOCESE OF NEW ORLEANS**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on August 18, 2022 via electronic filing upon the following:

| **Counsel for the Archdiocese** | **Counsel for the Committee** |
|---|---|
| Mark Mintz | Andrew William Caine |
| mmintz@joneswalker.com | acaine@pszjlaw.com |
| | |
| Samantha A. Oppenheim | Bradley C. Knapp |
| soppenheim@joneswalker.com | bknapp@lockelord.com |

**Counsel for the Non-Debtor Defendants**
Douglas S. Draper
ddraper@hellerdraper.com

/s/ Mark A. Mintz
Mark A. Mintz