UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | § § § § § § § § | Case No. 20-10846<br><br>Section "A"<br><br>Chapter 11 |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, | | |
| Debtor.[1] | | |

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | | |
| Plaintiff, | | |
| v. | | Adversary Proceeding no. 22-01015 |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, et al., | | |
| Defendants | | |

### MOTION TO DISMISS COMMITTEE'S
### FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

Now into Court, through undersigned counsel, comes the Non-Debtor Affiliates,[2] as identified in the Official Committee of Unsecured Creditors' (the "Committee") *First Amended*

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

[2] The Non-Debtor Affiliates are defined as: Philmat Inc.; Second Harvest Food Bank of Greater New Orleans and Acadiana; the Society for the Propagation of the Faith, Archdiocese of New Orleans; Catholic Community Foundation Archdiocese of New Orleans; Christopher Homes, Inc.; Catholic Charities Archdiocese of New Orleans; Notre Dame Seminary; New Orleans Archdiocesan Cemeteries; School Food and Nutrition Services of New Orleans, Inc.; St. Ann Roman Catholic Church and Shrine, Metairie, Louisiana; Immaculate Conception Roman Catholic Church, Marrero, Louisiana; St. Peters Roman Catholic Church Covington, Louisiana; Most Holy Name of Jesus Roman Catholic, New Orleans, Louisiana; Divine Mercy Roman Catholic Church, Kenner, Louisiana; Our Lady of the Lake Roman Catholic Church, Mandeville, Louisiana; St. Cletus Roman Catholic Church, Gretna, Louisiana;

*Complaint for Declaratory Relief* [Adv. Dkt. No. 32] (the "Complaint"), who file this Motion to Dismiss the Complaint (the "Motion"). The Complaint is a blatant attempt to circumvent the provisions of the Bankruptcy Code, the Bankruptcy Rules, established Fifth Circuit precedent and the general order of the bankruptcy process, including basic standing rules. In doing so, the Committee is expending precious estate resources and injecting chaos and more claims and litigation into the above captioned bankruptcy case (the "Bankruptcy Case").

The Committee has no authority under the Bankruptcy Code (as interpreted by established Fifth Circuit case law) to initiate an adversary proceeding. Nor does the Committee have primary or derivative standing to bring the Complaint—in fact, it has not even requested derivative standing from this Court. For these reasons and the ones outlined below, the Complaint should be dismissed so that the Bankruptcy Case can continue to progress in an orderly and efficient manner.

## BACKGROUND

On May 1, 2020 (the "Petition Date"), The Roman Catholic Church of the Archdiocese of New Orleans (the "Debtor" or "Archdiocese" or "ANO") filed the Bankruptcy Case under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor remains in possession of its property and is managing its business as debtor-in-possession ("DIP"). The Debtor's filing of the Bankruptcy Case created the bankruptcy estate pursuant to 11 U.S.C. § 541(a) (the "Estate"), which comprises, among other things, "all legal or equitable interests of [ANO] in property as of the commencement of the case

---

Notre Dame Health System (f/k/a Chateau de Notre Dame); Mary Queen of Vietnam Roman Catholic Church, New Orleans, Louisiana; St. Maria Goretti Roman Catholic Church, New Orleans, Louisiana; St. Edward the Confessor Roman Catholic Church, Metairie, Louisiana; Our Lady of Lourdes Roman Catholic Church, Slidell, Louisiana; Our Lady of Perpetual Help Roman Catholic Church, Belle Chasse, Louisiana; St. Raymond and St. Leo the Great Roman Catholic Church, New Orleans, Louisiana; Our Lady of Prompt Succor Roman Catholic Church, Chalmette, Louisiana; St. Patrick's Roman Catholic Church, Port Sulphur, Louisiana; and St. Paul the Apostle Roman Catholic Church, New Orleans, Louisiana.

… [and] [a]ny interest in property that the estate acquires after the commencement of the case."
*Id.*

On May 20, 2020, the Office of the United States Trustee (the "UST") appointed the Committee [Bankr. Dkt. No. 94] under section 1102 of the Bankruptcy Code, which was reconstituted on June 10, 2020 [Bankr. Dkt. No. 151], October 8, 2020 [Bankr. Dkt. No. 478], June 7, 2022 [Bankr. Dkt. No. 1575], and June 21, 2022 [Bankr. Dkt. No. 1618]. On March 5, 2021, the UST appointed the Official Committee of Commercial Creditors (the "Commercial Committee" and together with the Committee, the "Committees") [Bankr. Dkt. Nos. 772 & 792].

On March 25, 2022, amid mounting accusations, spiraling discovery disputes, and an encroaching deadline to file claims under chapter 5 of the Bankruptcy Code, the Archdiocese, the Committees, and the Parishes, entities, organizations, missions, campus ministry, centers, institutions of higher learning, catholic schools, and other facilities (the "Related Parties") filed an *Expedited Joint Motion to Approve Tolling Agreement* [Bankr. Dkt. No. 1390] (the "Tolling Motion"). On April 1, 2022, the Court entered an *Order Approving Tolling Agreement* [Bankr. Dkt. No. 1406] (the "Tolling Order"), granting the Tolling Motion and approving the Tolling Agreement between the parties (the "Tolling Agreement"), attached as Exhibit B to the Tolling Order.

The Tolling Agreement recited that the parties, including the Committee, agreed to ongoing mediation in front of the Honorable Gregg W. Zive, and that, in an effort to focus resources on said mediation, the parties agreed to extend the deadline for the Estate to assert certain claims as alleged by the Committees. [Bankr. Dkt. 1406, Exh. B at p. 2.] The Agreement also stated that the Committees "intend to seek standing to pursue the Estate Claims against the Related Parties in the event the Debtor refuses to do so." *Id.* Given said recitals, the Committees agreed that the

deadline for the Estate to assert claims under chapter 5 of the Bankruptcy Code would be tolled through and including May 1, 2023 (the "Tolling Period"), and that the Committees would not seek derivative standing to assert any such claims during the Tolling Period "except upon forty-five days' prior written notice to the Debtor and the other committee, through their counsel of record." *Id.* at 1 & 3. The Committee has not sought derivative standing, nor has it given notice of its intent to do so. It has filed the Complaint and have denominated it as a Declaratory Judgement in a not-so-subtle attempt to avoid the Tolling Agreement.

Despite its failure to comply with established Fifth Circuit case law addressing the ability of a committee to file suit, on April 14, 2022, the Committee initiated the instant adversary proceeding by filing the *Complaint for Declaratory Relief* [Adv. Dkt. No. 1], which was amended on April 27, 2022, as the Complaint. In the Complaint, the Committee asks the Court for a judgment declaring:

1) "Portfolio A, and the funds and assets therein, are not held by ANO in either an express or other trust, and all of the funds and assets therein, constitute property of ANO's' estate under 11 U.S.C. § 541(a)(1); . . ."

2) "Portfolio B, and the funds and assets therein, are not held by ANO in either an express or other trust, and all of the funds and assets therein, constitute property of ANO's' estate under 11 U.S.C. § 541(a)(1); . . ."

3) "Loans made by Portfolio B are property of ANO's estate under 11 U.S.C. § 541(a)(1); . . ."

4) "Parishes and Non-Debtor Affiliates cannot meet their burden to trace cash deposited into ANO's Operating accounts and commingled with other funds, prior to being transferred to Portfolio A, and therefore Portfolio A,

and all of the funds and assets therein, constitute property of ANO's estate under 11 U.S.C. § 541(a)(1); . . ."

5) "Parishes and Non-Debtor Affiliates cannot meet their burden to trace cash deposited into ANO's Operating accounts and commingled with other funds, prior to being transferred to Portfolio B, and therefore Portfolio B, and all of the funds and assets therein, constitute property of ANO's estate under 11 U.S.C. § 541(a)(1); . . ."

6) "Parishes and Non-Debtor Affiliates cannot meet their burden to trace cash deposited into Portfolio A and commingled with ANO's operating funds in Portfolio A, and all of the funds and assets therein, constitute property of ANO's estate under 11 U.S.C. § 541(a)(1); . . ."

7) "Parishes and Non-Debtor Affiliates cannot meet their burden to trace cash deposited into Portfolio B and commingled with ANO's funds in Portfolio B, and all of the funds and assets therein, constitute property of ANO's estate under 11 U.S.C. § 541(a)(1); . . ."

8) "ANO Portfolio A Purported Restricted Funds are unrestricted assets of the estate, free and clear of the interests of others, and may be used to satisfy the claims of general creditors; . . ."

9) "Non-Debtor Portfolio A Purported Restricted Funds are unrestricted assets of the estate, free and clear of the interests of others, and may be used to satisfy the claims of general creditors; . . ."

10) "ANO Portfolio B Purported Restricted Funds are unrestricted assets of the estate, free and clear of the interests of others, and may be used to satisfy the claims of general creditors; . . ."

11) "Non-Debtor Portfolio B Purported Restricted Funds are unrestricted assets of the estate, free and clear of the interests of others, and may be used to satisfy the claims of general creditors; . . ."

12) "[T]he Operating Account Purported Restricted Funds are unrestricted assets of the estate, free and clear of the interests of others, and may be used to satisfy the claims of general creditors[.]"

[Adv. Dkt. No. 32 at 27-28].

The Committee has no authority under the Bankruptcy Code to initiate an adversary proceeding within a Bankruptcy Case and, in fact, the Fifth Circuit has specifically stated committees have no automatic right to file adversary proceedings under the Bankruptcy Code. What's more is that the Complaint is nothing more than a transparent attempt to assert claims of the Estate under chapter 5 of the Bankruptcy Code; an action that is expressly barred under the Tolling Agreement absent the required 45-day advanced notice and a motion for derivative standing, neither of which have occurred. To the extent that such an action has merit, the claim would belong to the Estate, not the Committee, because the Committee has no direct interest in the funds in Portfolio A, Portfolio B, or the Operating Account.

## **LEGAL ANALYSIS**

### I.   **THE COMMITTEE HAS NO CAUSE OF ACTION**

Although the Committee styles the Complaint as one seeking declaratory judgment, it is, in substance, seeking to enforce a cause of action belonging to the Estate. "[W]e have oft stated

that the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label." *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (quotations omitted); *see also In re Vela*, No. 10-50293, 2011 WL 3439256, at *4 (Bankr. S.D. Tex. Aug. 2, 2011) and *In re Moody Nat. SHS Houston H, LLC*, 426 B.R. 667, 679 (Bankr. S.D. Tex. 2010) (recharacterizing a complaint as one for declaratory relief based on the true substance of the complaint).

Whether truly seeking declaratory relief or not, the Committee's Complaint involves an analysis of what constitutes "property of the estate" under section 541. Tellingly, in the Committee's prayer for relief, items 1 through 7 all expressly refer to 11 U.S.C. § 541(a). Although items 8 through 12 do not expressly cite to 11 U.S.C. § 541, they all seek a declaration that various funds are "unrestricted ***assets of the estate***." Complaint at p. 27 (emphasis added). In order for something to be an "asset" of the estate, it must simultaneously be "property" of the estate.

"The scope of the term 'property of the estate' is very broad. Section 541(a)(1)'s reference to 'all legal or equitable interests of the debtor in property' includes causes of action belonging to the debtor at the time the case is commenced." *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988). The claims asserted by the Committee in the Complaint are basically that the funds in Portfolio A, Portfolio B, and the Operating Account either (a) do not belong to the Non-Debtor Affiliates but to the Estate; and/or (b) are unrestricted funds and can be used to make disbursements to creditors under the Plan—both of which essentially claiming that those funds should be turned over to the Estate. The causes of action asserted in the Complaint, therefore, either belonged to the Archdiocese as of the Petition Date or were subsequently acquired by the Estate after the Petition Date under chapter 5 of the Bankruptcy Code. Either way, the causes of action properly belong to the Estate and not the Committee.

In fact, the Committee is a legal fiction created by the Bankruptcy Code for the purpose of safeguarding the rights of many and cannot, itself, possess a cause of action. Without an independent cause of action, the Committee has no right to initiate an adversary proceeding on its own. While the Committee asserts that it has an indirect interest in the funds via greater distributions to the Committee members, that is not sufficient to bestow standing. "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Matter of Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994). "Even if a claim 'belongs' to a creditor, the [DIP] has the exclusive right to bring the claim for the benefit of all creditors, provided the claim advances a generalized grievance." *In re Black Elk Energy Offshore Operations, LLC*, No. 15-34287, 2016 WL 4055044, at *3 (Bankr. S.D. Tex. July 26, 2016). The alleged harm the Committee complains of (i.e. less funds available to creditors) is just such a "generalized grievance" imagined by Judge Isgur in *Black Elk*. The mere indirect injury complained of by the Committee is insufficient to confer independent standing.

As is elaborated on below, absent the Court granting the Committee derivative standing—something that the Committee has not requested—all causes of action possessed by the Estate can only be brought by the DIP as an Estate claim because the DIP is the only entity with independent standing to bring such claims.[3]

## II.    LACK OF STANDING

---

[3] This is not withstanding the fact that the Complaint is a blatant violation of the Tolling Agreement which states: "Neither the Commercial Committee nor the Committee may seek derivative standing to commence any of the Estate Claims during the Tolling Period except upon forty-five days' written notice to the Debtor and the other committee, through their counsel of record." [Bankr. Dkt. No. 1406, Exh. A at 3].

Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), states that a party may move to dismiss for a lack of subject-matter jurisdiction. "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). The party asserting jurisdiction has the burden of proving that jurisdiction exists. *Krim v. PC Order Dot Com, Inc.*, 402 F.3d 489, 493 (5th Cir. 2005). Once a defendant brings a motion to dismiss for lack of standing, the burden is upon the plaintiffs to prove that they have standing. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998). In order to prove standing, under Article III of the Constitution, a plaintiff must have suffered an "injury in fact," which is "an invasion of a legally protected interest …" *In re Mirant Corp.*, 675 F.3d 530, 533 (5th Cir. 2012) *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In this case, the Committee lacks standing because it does not possess a "legally protected interest" in the contested funds. Rather, **the Estate** is the entity with the legally protected interest asserted in the Complaint and, therefore, the claim belongs to the Estate, not the Committee. As is made clear below, the Committee does not have statutory authority to initiate adversary proceedings in a bankruptcy case. Nor does the Committee have Court authority (derivative standing) to assert the causes of action that belong to the Estate.

    A.    **The Committee Has No Statutory Authority to Initiate Adversary Proceedings on Its Own**

The Committee was constituted pursuant to 11 U.S.C. § 1102 and given "the powers enumerated in 11 U.S.C. § 1103." [Dkt. No. 94]. Section 1103(c) defines the specific powers and duties of a committee appointed under section 1102:

> **(c)** A committee appointed under section 1102 of this title may--
>> **(1)** consult with the trustee or debtor in possession concerning the administration of the case;

> **(2)** investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
>
> **(3)** participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;
>
> **(4)** request the appointment of a trustee or examiner under section 1104 of this title; and
>
> **(5)** perform such other services as are in the interest of those represented.

11 U.S.C. § 1103(c).

Nowhere in section 1103 is a committee given the express authority to initiate adversary proceedings. While some courts have found that subsection (c)(5) grants a committee the right to initiate adversary proceedings as being part of performing services in the interest of those represented, such cases involved the committee obtaining the court's authorization or debtor's consent as well as extraordinary circumstances and did not allow a committee to *sua sponte* initiate an adversary proceeding within a bankruptcy case. See, e.g. *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988); *In re Catwil Corp.*, 175 B.R. 362, 364 (Bankr. E.D. Cal. 1994) ("The majority hold that creditors' committees *must* secure court approval before instituting adversary proceedings." (emphasis in original); *In re Adelphia Commc'ns Corp.*, 330 B.R. 364, 386 (Bankr. S.D.N.Y. 2005) (granting an equity committee standing to assert claims on behalf of the debtors' estates when claims were colorable, cost were modest, and prosecution would be in best interest of the estate) (*but see In re Adelphia Commc'ns Corp.*, 544 F.3d 420, 423–25 (2d Cir. 2008) (subsequently withdrawing the previously granted authority when the committee's role was no longer in the best interest of the estate)); *In re STN Enterprises*, 779 F.2d 901, 904 (2d Cir. 1985) ("The Bankruptcy Code, however, contains no explicit authority for

creditors' committees to initiate adversary proceedings. … 11 U.S.C. §§ 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate suit with the approval of the bankruptcy court."); *In re AppliedTheory Corp.*, 345 B.R. 56, 58 (S.D.N.Y. 2006), *aff'd,* 493 F.3d 82 (2d Cir. 2007) (acknowledging the qualified right of a committee to initiate suit with the approval of the bankruptcy court); *In re Tennessee Valley Steel Corp.*, 183 B.R. 795, 799 (Bankr. E.D. Tenn. 1995) ("the implied grant of standing is recognized as a 'qualified right.'"); *In re Fugazy*, 150 B.R. 103, 105 (Bankr. S.D.N.Y. 1993) ("a creditors' committee may have an implied right to initiate a suit on behalf of the debtor's estate, with court approval, if the debtor is unwilling to do so, where the claim is colorable and the action is likely to benefit the estate."); *In re Prime Motor Inns, Inc.*, 135 B.R. 917, 919 (Bankr. S.D. Fla. 1992) ("Even official committees do not have standing to prosecute such actions absent extraordinary circumstances.").

The other provision in the Bankruptcy Code that courts have pointed to as creating an "implied" right to initiate actions is 1109(b), which states that a committee "may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The Fifth Circuit has carefully analyzed the use of the word "case" in section 1109 as opposed to "proceeding" and draws an important distinction. In *Fuel Oil Supply and Terminaling v. Gulf Oil Corp.*, the creditors committee asserted that 1109(b) granted it an "unconditional right to intervene" within the meaning of Fed. R. Civ. P. 24(a)(1) based on the interpretation that a bankruptcy "case" encompasses adversary proceedings. 762 F.2d 1283, 1284 (5th Cir. 1985). The Fifth Circuit disagreed with such a broad reading of the word "case." The court noted that in adversary proceedings, Fed. R. Civ. P. 24 applies through Fed. R. Bankr. P. 7024 and that Rule 24(a)(1) grants a person the right to intervene if "a statute of the United States confers an

unconditional right" to do so. *Id.* at 1286. The court noted that other opinions interpreting what constitutes an "unconditional right" have found that "private parties are rarely given an unconditional statutory right to intervene." *Id.*

The court next found support in Title 28, which the court noted draws many distinctions between bankruptcy cases and proceedings related to them such as with jurisdiction (28 U.S.C. § 1471(a) and (b)); abstention (28 U.S.C. § 1471(d) and 11 U.S.C. § 305); venue (28 U.S.C. §§ 1472 and 1473); and jury trials (28 U.S.C. § 1480(a)). *Id.* The court also pointed to the Advisory Committee Note under Rule 7024, which notes that intervention in a case under the Bankruptcy Code is governed by Rule 2018, while intervention in an adversary proceeding is governed by Rule 7024 and specifically states that "[i]ntervention in a case and intervention in an adversary proceeding must be sought separately." *Id.* at 1286–87. The court concluded:

> Because of the limited scope of Rule 24(a)(1) and the distinctions Congress has drawn between bankruptcy "cases" and related "proceedings," therefore, we conclude that Congress did not create an absolute statutory right to intervene in bankruptcy adversary proceedings through § 1109(b).

*Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1287 (5th Cir. 1985).[4]

Given the Fifth Circuit's distinction between a bankruptcy "case" and an adversary "proceeding" in the context of intervention and the holding of *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988) (discussed *infra*), it is clear that there is no statutory or

---

[4] While the First, Second, and Third Circuits have disagreed with the Fifth Circuit when it comes to **intervention** in an adversary proceeding, it is still notable that, in the context of **initiating** an adversary proceeding, these circuits still hold that there is no absolute right to initiate an adversary proceeding and court approval or debtor consent is still required. See *In re Together Dev. Corp.*, 262 B.R. 586, 590 (Bankr. D. Mass. 2001); *In re Adelphia Commc'ns Corp.*, 544 F.3d 420, 423–25 (2d Cir. 2008); *In re STN Enterprises*, 779 F.2d 901, 904 (2d Cir. 1985); *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 580 (3d Cir. 2003). Furthermore, *Fuel Oil Supply* is still the law in the Fifth Circuit.

court created automatic right for the Committee to *sua sponte* initiate an adversary proceeding in a bankruptcy case on behalf of the Estate and asserting Estate claims.

B.  **Lack of Derivative Standing**

Having established that the claims asserted in the Complaint are property of the Estate and that the Committee lacks independent standing to bring such claims, the only remaining option would be for the Committee to obtain derivative standing to bring the Complaint on behalf of the Estate/DIP. *Louisiana World Exposition* ("*LWE*") is the ruling precedent in the Fifth Circuit for granting a committee derivative standing to bring a suit on behalf of a debtor in bankruptcy. *LWE* laid out three considerations relevant to determining when it is proper to grant a committee derivative standing: 1) the claim is colorable; 2) the debtor-in-possession refused unjustifiably to pursue the claim; and 3) the committee first receive leave to sue from the bankruptcy court. *LWE*, 858 F.2d at 247. "These requirements ensure that derivative standing does not risk interfering with the debtor or trustee and prevents creditors from pursuing weak claims." *In re On-Site Fuel Serv., Inc.*, No. 18-04196-NPO, 2020 WL 3703004, at *9 (Bankr. S.D. Miss. May 8, 2020).

First, and foremost, the Committee does not assert derivative standing to pursue its claims (presumably because doing so would be in direct violation of the Tolling Agreement and contrary to the precedent established in *LWE*). To the extent that the Complaint can be considered to be brought via derivative standing, such a claim cannot be brought without express Court authority, which was not requested by the Committee and, *ipso facto*, not granted by the Court.

The reality is that whether the Committee can meet the three requirements in *LWE* is not before the Court because 1) the Complaint is styled in the name of the Committee (not the Debtor) as plaintiff; and 2) the Committee has not sought leave from the Court to file the Adversary Proceeding in the first place. It is as if the Committee is trying to ignore *LWE*'s requirements by

pretending that the causes of action asserted in the Complaint belong to the Committee—an absolute fiction.

1. The Committee Has Not Sought Leave to Sue

Under *LWE*, the Committee is first required to seek leave from the Court to bring an action on behalf of the Debtor to have the subject funds declared property of the Estate. It has not done so. In addition, the Tolling Agreement makes clear that prior to seeking such leave from the Court, the Committee is required to first give 45-days advanced notice of its intent to request derivative standing to the Debtor. It has not done so.

In some circumstances, courts have found that a committee may bring an action based on derivative standing when the debtor consented to the committee bringing the action. *In re Cooper*, 405 B.R. 801, 810 (Bankr. N.D. Tex. 2009) citing *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC),* 423 F.3d 166, 176 (2d Cir.2005) and *Avalanche Mar., Ltd., v. Parekh (In re Parmetex, Inc.),* 199 F.3d 1029, 1031 (9th Cir.1999). However, the Debtor did not expressly consent, and the Tolling Agreement is evidence that the Debtor did not impliedly consent. The Tolling Agreement expressly requires a 45-day advance notice prior to the Committee bringing an action under chapter 5 of the Bankruptcy Code, it cannot reasonably be said that the Debtor has consented either expressly or impliedly to the Committee's Complaint. As the court in *On-Site Fuel* noted, "[d]erivative standing by agreement would require coordination of litigation responsibilities between the [Debtor] and the [Committee] …" *On-Site Fuel Serv., Inc.*, 2020 WL 3703004, at *11. There has been no discussion of litigation responsibilities between the Debtor and the Committee. Simply put, the Debtor has not consented.

2. The Debtor Has Not Unjustifiably Refused

While the Fifth Circuit in *LWE* noted that the Debtor *could not* bring the suit against its managers due to an inherent conflict of interest and construed that as a *de facto* refusal, here, the Committee never made any request for the Debtor to refuse so there is no way to determine whether any refusal would be unjust. The determination as to whether the Debtor has "unjustifiably refused" requires an evidentiary hearing which would require the Committee to file an *LWE*-type motion. By filing the Complaint, the Committee made the strategic decision that it does not want to file such a motion. The issue as to whether the Debtor has unjustifiably refused is not before this Court at the present time.

## **CONCLUSION**

The Committee's Complaint for Declaratory Relief is nothing more than a Complaint to assert a cause of action that rightly belongs to the Debtor. In addition to violating the Tolling Agreement, the Committee does not have independent (i.e. statutory) or derivative standing under *LWE* to bring the Complaint. As such, the Non-Debtor Affiliates respectfully request that the Court dismiss the Complaint for lack of standing.

August 18, 2022

                                            Respectfully submitted:

                                            */s/ Douglas S. Draper*
                                            Douglas S. Draper, La. Bar No. 5073
                                            Leslie A. Collins, La. Bar No. 14891
                                            Michael E. Landis, La. Bar No. 36542
                                            HELLER, DRAPER & HORN, L.L.C.
                                            650 Poydras Street, Suite 2500
                                            New Orleans, LA 70130-6103
                                            Telephone: 504.299.3300/Fax: 504.299.3399
                                            E-mail:ddraper@hellerdraper.com
                                            E-mail:lcollins@hellerdraper.com
                                            E-mail: mlandis@hellerdraper.com

*Attorneys for the Non-Debtor Affiliates
(a/k/a the Apostolates)*

# CERTIFICATE OF SERVICE

I, Douglas S. Draper, hereby certify that a copy of the above and foregoing has been served on August 18, 2022, upon the following parties via this Court's electronic notification system as follows:

**Counsel for the Plaintiff**

Andrew William Caine
acaine@pszjlaw.com

Bradley C. Knapp
bknapp@lockelord.com

**Counsel for the Non-Debtor Defendants**

Douglas S. Draper
ddraper@hellerdraper.com

**Counsel for Defendant, The Roman Catholic Church of the Archdiocese of New Orleans**

Mark Mintz
mmintz@joneswalker.com

/s/ Douglas S. Draper
Douglas S. Draper